IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

JACQUELINE S. (WEIBEL) BREWER,    Shelby Chancery No. D 14591-1
                                  C.A. No. 02A01-9703-CH-00067
        Plaintiff,

                                  Hon. Neal Small, Chancellor
v.

JOSEPH WILLIAM WEIBEL, III,

        Defendant.

BRUCE KELLY, JR., Memphis, Attorney for Plaintiff.

JAMES F. ARTHUR, III., Germantown, Attorney for Defendant.

FILED

April 7, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

***AFFIRMED IN PART AND REVERSED IN PART***

Opinion filed:

_____

**TOMLIN, Sr. J.**

This is a post-divorce child custody suit. Joseph Weibel III ("father") filed a petition in the Chancery Court of Shelby County against Jacqueline Brewer ("mother") seeking to have custody of the parties' minor child, Joseph Weibel IV, ("Joey") changed from mother to father. Mother had primary physical custody of the parties' child pursuant to a consent order calling for joint custody. Following a hearing, the chancellor awarded father sole custody, with mother having extensive visitation. The court also ordered father to pay mother's attorney fees and expenses in connection with the litigation. Mother has raised two issues by this appeal. First, whether the evidence preponderates against the finding of the chancellor that it was in the best interest of the parties' child to award custody to father. And second, although father was directed to pay mother's attorney fees and litigation expenses in connection with the trial below, mother as appellant herein raises the issue of whether the chancellor abused his discretion in directing father to pay mother's attorney fees. For the reasons hereinafter stated, we affirm the award of custody to father and reverse the award of attorney fees to mother.

The minor child who is the subject of this custody fight was approximately ten years old at the time of trial. Mother and father were married in June 1985 and divorced in March 1987. At the time of the final decree of divorce, the chancellor awarded custody of Joey to his maternal grandparents for a period of six months, pending a further hearing on the issue of permanent custody. Thereafter, the chancellor entered a consent order awarding the parties joint custody,

with mother receiving primary physical custody. Following much contention, with petitions and counter-petitions to change custody, father filed the petition at the heart of this litigation in June 1995.

## I. The Custody Issue.

It has long been established that in child custody cases our scope of review on appeal is *de novo* upon the record in the trial court. Findings of the trial court come to this court with a presumption of correctness, and absent an error of law, we must affirm unless the preponderance of evidence is otherwise. Hass v. Knighton, 676 S.W.2d 554, 555 (Tenn. 1984). At all times the paramount interest in a custody proceeding is the best interest of the child. Garfinkel v. Garfinkel, 945 S.W.2d 744, 747 (Tenn. Ct. App. 1996).

In Musselman v. Acuff, 826 S.W.2d 920, 922 (Tenn. Ct. App. 1991), the Eastern Section of this court set out the procedural process to be followed in a case such as this:

> When the issue before the Court is whether to modify a prior custody order, it need not repeat the comparative fitness analysis that is appropriate at the time of the original custody decree. Instead, in a modification proceeding, the trial court must find a material change in circumstances that is compelling enough to warrant the dramatic remedy of changed custody. Moreover, the burden is on the non-custodial parent to prove changed circumstances.
> (citations omitted).

The issue of custody was hotly contested in the court below. Following the parties' divorce, father remarried and a child was born to that marriage. Father started his own electronics repair business, increasing his annual income to $108,000.00. Mother also remarried to a man by the name of Steve Brewer. It is undisputed that Brewer had a problem with alcohol and that mother endured his physical abuse on at least one occasion. Following a separation of some five months, mother and Brewer were divorced shortly before the filing of this petition. However, mother testified at the hearing below that she and Brewer had since become reconciled.

Shortly after mother separated from Brewer, she took a leave of absence from her employment as a real estate manager because of concerns about the area to which she was being reassigned. During some of this time that she lived apart from Brewer, mother shared a house owned and occupied by one Heather Beckum. Mother obtained employment as a waitress at two

local bars, one during the day and one at night. She stated she would not get home from her night job until 3 a.m. Mother arranged for Joey to spend the nights with a babysitter who lived next door to Heather's house. Mother testified that she would awaken at 6 a.m., go next door and get Joey, feed him breakfast and then take him to school. She testified that she would be off from her day job in time to pick Joey up from school and spend time with him in the evening before she went to work at her second job as a cocktail waitress.

Father testified that Heather Beckum was a drug user and a drug seller. He also contended that mother was using and selling drugs as well. Mother denied having any problems with drugs or alcohol. However, she admitted that she saw drugs in Heather's home and she observed Heather using drugs. She testified that the reason she didn't move out of Heather's home sooner was because she had no other choice of a place to stay at the time. Mother moved back in with Brewer, her former husband, after some eight weeks of living with Heather. Mother explained that Brewer had been diagnosed as having diabetes, and thus can no longer drink alcohol.

In reviewing this record, we are of the opinion that the trial court clearly had in mind the best interest of the parties' child when he made the ruling that he did. We also are of the opinion that he made a sound analysis of the proof presented by both parties, again looking at the proof in the light of what is in the best interest of this child. In essence, the court found that the father and his present wife was able to provide the more stable home life for Joey. Father carried his burden of proof in establishing that there had been material change in circumstances that would adversely affect the welfare of their child. Accordingly, this issue is resolved in favor of father.

### II. The Attorney Fee Issue.

Father contends that the trial court erred in ordering him to pay attorney fees and related expenses incurred by mother inasmuch as she was not the "prevailing party" under the statute. T.C.A. § 36-5-103(c) (Supp. 1997) provides that in custody proceedings, whether upon the original order or a subsequent modification thereof, the trial court has the discretion to award attorney fees to the party who was awarded custody of the child or children. In our opinion, it was error for the court to tax father in this case with mother's attorney fees. Accordingly, the judgment of the chancellor below, directing father to pay mother's attorney fees and related expenses, is reversed. Each party should be responsible for his or her own attorney fees.

The judgment of the trial court is therefore reversed as to the attorney fee issue, and affirmed in all other respects. Costs in this cause on appeal are taxed one-half to father and one-half to mother, for which execution may issue if necessary.


_____
TOMLIN, S.J., W.S.


_____
CRAWFORD, P.J. W.S.          (CONCURS)


_____
LILLARD, J.                    (CONCURS)

4